UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. Action No. 21-0212 (ABJ) |
| ) | |
| JARED HUNTER ADAMS, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is defendant Jared Hunter Adams's motion to modify his conditions of release. [Dkt. # 26] ("Mot."). Defendant asks the Court to vacate the condition that he not possess firearms. *Id.* at 1. The government opposes the motion. Gov't's Mem. in Opp. [Dkt. # 28] ("Opp."). For the following reasons, defendant's motion will be denied.

## BACKGROUND

On January 6, 2021, thousands of people took part in a deadly and destructive attack on the Capitol in an effort to disrupt the certification of the results of the 2020 presidential election. They forced their way into a federal building that was closed to the public on that day, requiring many elected officials and their staff – fearing for their safety – to flee or shelter in place, and injuring over one hundred law enforcement officers.[1] The defendant publicized his participation in these events on social media, Opp. at 2–3, and he is charged in a four count information with Entering and Remaining in a Restricted Building in violation of 18 U.S.C. § 1752(a)(1), Disorderly and

---

1  *See Examining the U.S. Capitol Attack*, Committee on Homeland Security and Government Affairs & Committee on Rules and Administration Report (June 8, 2021), https://www.rules. senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf.

Disruptive Conduct in a Restricted Building in violation of 18 U.S.C. § 1752(a)(2), Violent Entry and Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 4104(e)(2)(G).  Information [Dkt. # 7].

Defendant returned home to Ohio where he was arrested on March 9, 2021. *See* Arrest Warrant [Dkt. # 5].  On March 15, 2021, he was released on personal recognizance subject to standard conditions:

> (1) The defendant must not violate federal, state, or local law while on release.
>
> (2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.
>
> (3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of resident or telephone number.
>
> (4) The defendant must appear in court as required . . . . [and]
>
> (5) The defendant must sign an Appearance Bond, if ordered.

Order Setting Conditions of Release [Dkt. # 13] ("Order") at 1. He was also ordered to abide by several other conditions, including that he "not possess a firearm, destructive device, or other weapon." *Id.* at 2.

## ANALYSIS

Under the Bail Reform Act, a judge must release the defendant on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  The condition that the defendant not possess firearms is not a required condition of release under the statute;

2

section 3142(b) requires only the condition that the defendant not violate any federal, state, or local law, and, if appropriate, that he cooperate in the collection of DNA. *Id.*

Pursuant to 18 U.S.C. § 3142(c), though, if the judicial officer determines that the release described in subsection (b), that is, release on personal recognizance, or with an unsecured appearance bond, will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community:

> such judicial officer shall order the pretrial release of the person –
>
>> (A) subject to the condition that the person not commit a Federal, State, or local crime . . .; and
>>
>> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include . . .
>
> [any of the thirteen possible conditions listed] or any other condition that is reasonably necessary.

18 U.S.C. § 3142(c)(1)(B).

One of the thirteen conditions listed in the statute is: "refrain from possessing a firearm, destructive device, or other dangerous weapon." *Id.* § 3142(c)(1)(B)(viii). Thus, the firearms condition is specifically contemplated by the statute, but the court must make a finding that it is reasonably necessary to protect the community.

The Magistrate Judge in defendant's home district, the U.S. District Court for the Southern District of Ohio, and the Magistrate Judge in this district both determined that the firearms restriction was reasonably necessary in this case. *See* Order at 2. The recognized practice is that the district court reviews a bond determination made by the Magistrate Judge *de novo*,

3

*see United States v. Saani*, 557 F. Supp. 2d 97, 98 (D.D.C. 2008), and the Court will follow that practice here.

Under 18 U.S.C. § 3142(g), the factors to be considered in determining whether there are conditions that will reasonably assure the safety of the community include:

> (1) the nature and circumstances of the charged offenses;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the history and characteristics of the defendant; and
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g)(1)–(4).

Here, the nature and circumstances of the offense establish that the restriction is plainly justified. The defendant was captured on video threatening not once, but twice, that "next time" he would return with firearms.[2] Moreover, he was not merely a protester or passive observer of events unfolding around him; another video obtained from his own phone reveals that he was part of the angry mob pushing against the line of law enforcement officers who were attempting to protect the building.[3]

---

2   *See* Ex. B to Opp. [Dkt. # 28-2], cell phone video at 04:16 ("Next time we're coming back with [undecipherable] firearms! We'll see how tough they are then!"); *see also* Ex. C to Opp. [Dkt # 28-3], cell phone video at 06:54 ("I wouldn't try that shit, next time we leave our guns at home. Next time we won't leave our guns at home!").

3   *See* Ex. C, cell phone video beginning at 05:39 ("Don't stop pushing!" shortly before the video becomes blurred in the midst of the concerted movement against the officers).

In addition, the defendant's history and characteristics include some prior history of violence,[4] and when considering the nature and seriousness of the danger to the community that restoring his access to firearms would create, it is notable that the record reflects that at one time, the collection of firepower in the defendant's home included not just hunting rifles, but also a loaded Beretta 9mm handgun.  *See* Opp. at 5.  The weight of the evidence is strong given the available video and the defendant's own statements, and all of these facts lead the Court to conclude that the condition is reasonably necessary to protect the community, both in Washington, D.C., and locations of potential future demonstrations, and in the defendant's home district.  *See also United States v. Green*, No. 3:18-CR-356, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019) (denying motion to modify conditions of release because "Defendant's possession of firearms endangers officers of the Pretrial Services who may make unannounced visits to ensure that Defendant is complying with the conditions of his release").

The finding that the condition is necessary is further supported by the fact that for three months, the defendant ignored the requirement in the order of release that he identify the custodian of the key to his gun locker,[5] and by his spotty compliance with the very modest condition that he phone in regularly to Pretrial Services.[6]  *See United States v. Munchel*, 991 F.3d 1273, 1281

---

[4]    Defendant was convicted of disorderly conduct in 2013; police received a report that he "picked his brother up by the throat and slammed him down on the table" with enough force to break the table, and he was accused of committing a sexual assault in 2016 but no charges were filed.  Opp. at 5.

[5]    *See* Pretrial Compliance Report (July 2, 2021) [Dkt. # 25] (SEALED) ("July 2021 PCR") at 2 (stating that Pretrial Services had not yet received the information regarding the third-party custodian for his gun collection); *see also* Min. Entry (July 6, 2021).

[6]    *See* July 2021 PCR at 2 (reporting that defendant failed to report by telephone during the weeks of April 26, 2021, and May 3, 2021).

(D.C. Cir. 2021) ("[I]t defies logic to suggest that a court cannot consider whether it believes the defendant will actually abide by its conditions when making the release determination in the first instance.").

The Court also finds that the restriction is the least restrictive means available. The burden on defendant's ability to pursue his hobby of gun collection is minimal since he has not been required to surrender the firearms, *see* July 2021 PCR at 2; he is simply denied access during the pendency of this case. And the temporary interference with his ability to pursue his hobby of hunting is justified and outweighed by the substantial risk to public safety.

For all of these reasons, after consideration of the entire record and all of the section 3142(g) factors, the motion is hereby **DENIED**.

_____
AMY BERMAN JACKSON
United States District Judge

DATE: July 22, 2021