UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 1:21-cr-00212 (ABJ) |
| | : |
| JARED HUNTER ADAMS, | : |
| | : |
| Defendant. | : |

**UNITED STATES' OPPOSITION TO DEFENDANT'S OMNIBUS MOTION *IN LIMINE*** 

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's motion *in limine*, ECF No. 83, to preclude the use of relevant evidence and certain terminology at trial.

**LEGAL STANDARD**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible." *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993); Fed. R. Evid. 402. This is a "liberal" standard. *United States v. Moore*, 1:18-cr-198 (JEB), 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 establishes a high barrier to justify the exclusion of evidence." *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020). But it is not enough that the evidence is simply prejudicial; to be excluded, the prejudice must be "unfair," and the danger of that "unfair" prejudice must substantially outweigh the evidence's probative value. *See United States v. Cassell*,

292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" (quoting *Dollar v. Long Mf'g*, 561 F.2d 613, 618 (5th Cir. 1977))); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of unfair *prejudice*, and gives the court discretion to exclude evidence only if that danger *substantially* outweighs the evidence's probative value." (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (cleaned up)).

## ARGUMENT

The defendant, Jared Adams, argues that several categories of evidence should be excluded at trial—including:

(1) Use of "inflammatory words and phrases" (Def. Opp., ECF No. 83, at 1-2);

(2) Arguments on "vicarious liability or collective guilt" (*id*. at 1, 2-3); and

(3) Reference to "any political views" of the defendant (*id*. at 1, 3).

Adams urges the Court to order the exclusion each of these categories arguing under various combinations of Rules 401, 403, and the First and Fifth Amendments. The relief sought is unnecessary or otherwise unsupported by the law. The motion should be denied in its entirety.

### I.   USE OF ACCURATE LANGUAGE IS ADMISSIBLE

First, Adams moves to preclude the United States and witnesses from using certain terms to describe Adams and other rioters during trial. *See* Def. Opp., at 1-2. In particular, Adams wants to sanitize the trial to avoid a list of words such as "sedition," "insurrection," "treason," "attack on the Capitol," "attack on Congress," "election denier," "attack on democracy," "militia," "mob," "riot," and "terrorism/terrorist." *Id*. at 2.[1] Remarkably, Adams' motion is so expansive that it

---

[1] The United States does not plan to use the terms "sedition," "treason," or "terrorism/terrorist" in this case so the Court need not consider the 403 balancing test for these terms in particular.

seeks to preclude not only government counsel from characterizing the evidence in this manner, but it also seeks to censor any *witnesses* called by the United States, if they wanted to use these words. *See id.* at 1. Because these terms accurately describe the events on January 6, 2021, the Court should deny Adams' motion.

Adams seeks to sanitize—and thereby distort—witness testimony and the parties' advocacy under the guise of Rule 403. Rule 403 does not require the United States to bow to a defendant's preference and "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges may arouse emotion. There is nothing improper about that. In fact, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *See Rude*, 88 F.3d at 1548 (finding the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the United States should not be required to sterilize its language and step gingerly around the defendant's crimes or his participation in what was clearly a concerted effort to

3

accomplish illegal objectives. Judges across this district have faced similar motions and, in denying them, recognized that what took place on January 6, 2021 was, in fact, a riot, involving rioters, and an attack on the U.S. Capitol and American democracy. *See, e.g.*, *United States v. Carpenter*, 1:21-cr-205 (JEB), ECF No. 78 at 7-8 (denying a similar motion; "[w]hat occurred on January 6 was in fact a riot and an insurrection, and it did in fact involve a mob"); *United States v. Hostetter, et al.*, No. 1:21-cr-00392 (J. Lamberth), Minute Order 10/11/2023 (D.D.C. Oct. 10, 2023) (denying the defense's motion, ECF 294, to preclude use of the terms "insurrectionist," "mob," and "rioters" among other terms); *but cf. United States v. Rhine*, No. CR 21-0687 (RC), 2023 WL 2072450 (D.D.C. Feb. 17, 2023) at *8 (limiting the use of the terms "insurrection" and "insurrectionist" absent a specific showing outside the presence of the jury). The terms to which the defendant objects are thus accurate descriptors, not attempts to provoke or agitate the jury. *See United States v. Chwiesiuk*, 1:21-cr-536 (CKK), ECF No. 83 at 6 (denying a similar motion, and stating "what occurred on January 6, 2021 was in fact an insurrection and involved insurrectionists and, therefore, the terms to which Defendants object are accurate descriptors"). After carefully considering the facts of other January 6 cases, many other judges in this district have used similar language to recognize the riot as just such an attack. *See, e.g.*, *United States v. Hostetter*, 1:21-cr-392-1 (RCL), ECF No. 275 at 7 (referring to "the riot," "rioters"); *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40-41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government"); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building," and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v.*

4

*Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33-34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. Prosecutors here similarly need to use appropriate language—and not defense-friendly euphemisms—to describe the nature and gravity of the defendant's conduct.

In another January 6 case, *United States v. Vincent Gillespie*, Judge Howell denied a defendant's motion *in limine* to exclude references to substantially similar terms under Fed. R. Evid. 403. Memorandum and Order, ECF No. 43, 1:22-cr-60 (BAH) (Nov. 30, 2022). The court found that the terms "insurrection," "attack," "riot," "mob," and "rioters" "accurately describe[d] the events that occurred on January 6, 2021." *Id.* at 5-6 (collecting other cases using these terms to describe the events of January 6). Judge Howell declined to "muzzl[e] the government or its witnesses from employing commonly used phrases to describe the events on January 6, 2021," and held that "the mere use of these terms does not . . . signal prejudice substantially outweighing their probative value" under Fed. R. Evid. 403. *Id.* at 6-7. This Court should reach the same conclusion for the terms the defendant seeks to exclude.

The defendant asks the Court to prevent the United States from using language that accurately describes the events that took place at the Capitol on January 6. Adams purposefully joined in the group of people who overwhelmed police on January 6, 2021 to gain unlawful entry into the U.S. Capitol. The evidence will show that Adams saw Capitol police trying to hold the building and said they had "better have enough" pepper spray, as well as commenting that "I hope

DHS brought enough bullets." After witnessing officers attempting to keep the rioters from going further onto Capitol grounds, Adams entered the Capitol through the Senate Wing Door. He encouraged others to "funnel in like cattle. . . just keep going, push yourself." Adams participated in a riot. Nothing in Federal Rule of Evidence 403 prevents the United States from calling a spade a spade—or from using terms such as "rioter" or "insurrectionist" in this case. The motion should be denied.

## II.     NEITHER VICARIOUS LIABILITY NOR COLLECTIVE GUILT ARE AT ISSUE

The defendant additionally argues that "any Government suggestions of vicarious criminal liability or collective guilt would be unduly prejudicial, confusing and likely to mislead the jury, and also likely to cause delays and waste time." Def. Opp., at 2-3.

First, the government does not intend to argue on a theory of vicarious criminal liability or collective guilt in this case. However, to the extent the defendant hopes to eliminate any mention of the consequences of his actions—including his choice to participate in the mob and to encourage others to breach the Capitol as well—the motion should be denied.

Here, the government must show that the defendant's conduct caused a significant disruption to a vital governmental function—proving necessary elements for Count Two (requiring "that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions") and Count Three (requiring "intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either house of Congress. . ."). 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D). It is the case that the sheer numbers of the riotous mob did in fact halt the business of government in the Capitol building, which Adams entered knowingly and intentionally alongside other members of the mob, on January 6, 2021. The jury should be able to consider these facts in their deliberations just as members of the bench in this

District have done so already in their role as fact-finder. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Not only have these facts properly been considered by other fact-finders (juries and Judges alike) in this District, they are also not precluded—as Adams argues—under Rule 403 because the introduction of the fact that the riotous mob which Adams participated in stopped the function of government business that day is not "unduly prejudicial, confusing and likely to mislead the jury," nor is it "likely to cause delays and waste time." Def. Opp., at 3. On the contrary, these are the very relevant and probative circumstances in which Adams chose to commit his actions that day. This motion should be denied.

### III. ADAMS' RELEVANT POLITICAL VIEWS ARE ADMISSIBILE TO THE EXTENT THEY PROVE REQUISITE INTENT

Finally, the defendant argues that the government should be precluded from "referencing Mr. Adams' political views" (Def. Opp., at 1), and even states that "Mr. Adams denies" that his views "expressed on or around January 6, 2021" can be used "to establish a motive for his actions." Def. Opp., at 3. The defendant further argues that "any reference to his political views should be extremely limited, even if allowed" because of a risk of prejudice against the defendant. Def. Opp., at 3. But Rule 403 does not preclude evidence probative of the defendant's intent just because it may also prejudice the defendant—regardless of any "denial"

7

by the defendant that his views may be referenced during the trial. Instead, the law requires that probative evidence (for instance, evidence probative of intent) can only be excluded where the prejudice "substantially outweighs" its probative value. *See Pettiford*, 517 F.3d at 590. Here, Adams' statements made before, during and after his crimes are so extremely probative of his state of mind that any prejudice is far outweighed. Therefore, this relevant evidence probative to Adams' state of mind—whether or not it touches on his political views—is admissible under the law.

To be clear, the government has no interest in raising the defendant's political views other than to the extent needed to prove the requisite statutory intent of Adams' crimes at issue in this case. However, the government has the burden of proving beyond a reasonable doubt that Adams acted "with intent to impede and disrupt the orderly conduct of Government business and official functions" for Count Two and "with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either house of Congress. . ." for Count Three. 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D). To the extent his political statements are probative of this intent on January 6, 2021, they should be allowed and the motion should be denied.

Evidence of Adams' specific statements leading up to his actions on January 6, 2021 and those made during the commission of his crimes as well as afterwards by Adams, reflecting on his actions that day and their consequences, are immensely probative of his state of mind and cannot rightly be excluded. For instance, Adams stated, "We stormed the Capitol building and the senate today! I can tell my grandchildren I was there!" He also posted—interspliced with photos and videos of the January 6 riot, including videos of rioters smashing in windows of the Capitol:

- "That's our house.  We own it.  I don't care if you feel some kinda way.  The only kinda way it looks to me is that of complacency and cowardice.  What was your plan vote next year, why wen you let corruption stand this year?"

- "The left: 2bil in damages from leftist riots from trying to burn down towns from gas stations to footlocker.  The right: a couple broken windows and a table.  Also the left: the Capitol is under siege!!!!"

- "The left burns down and destroys other peoples property.  The rally in dc ended up havin people break their own windows so we are not the same[.]  If you don't understand the difference I'm appalled."

- On January 6, 2021 at 9:09 p.m., in response to a text message asking if he made it to D.C., Adams responded, "Yes and stormed the Senate."

- On January 7, 2021 at 6:54 a.m., "Nah im cool stormed the Capitol building got pics and vids."

These statements and others like it go directly to Adams' state of mind and absence of mistake when participating in the mob on January 6.  The probative value of these statements as to Adams' state of mind and intent far outweighs any prejudice towards the defendant.  The Court should deny this motion.

## IV. CONCLUSION

For the reasons described above, the United States respectfully requests that this Court deny Adams' motion *in limine* in its entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

        D.C. Bar No. 481052

By:   */s/ Victoria A. Sheets*
      VICTORIA A. SHEETS
      Assistant United States Attorney
      NY Bar No. 5548623
      601 D Street, N.W.
      Washington, D.C. 20001
      (202) 252-7566
      Victoria.Sheets@usdoj.gov

      */s/ Sarah W. Rocha*
      SARAH W. ROCHA
      Trial Attorney
      D.C. Bar No. 977497
      601 D Street, NW Washington, DC 20579
      (202) 330-1735
      sarah.wilsonrocha@usdoj.gov